BRICKLES, Appellant, vs. MILWAUKEE LIGHT, HEAT & TRACTION COMPANY, Respondent.

*January 8—January 28, 1908.*

*Eminent domain: Compensation: Persons entitled: Interurban railways: Abutting owners: Appeal from award of commissioners: Defects: Dismissal: Accrual of and right to damages: Transformation of ambiguous possession by condemnation: Proceedings to condemn, when completed: Same, when consummated.*

1. In a proceeding by an interurban railway company to condemn all the rights of property which would entitle the owners interested in lots fronting and abutting on a street to damages by reason of the construction, maintenance, and operation on

such a street of its line of railway, but subject to a franchise theretofore granted by the municipal authorities, it appeared, among other things, that the railway's predecessor had lawfully maintained a street railway on and along such street; that for several years prior to the filing of the petition and also prior to the enactment of ch. 465, Laws of 1901 (granting the right of eminent domain to interurban railways), the defendant, with the same street railway tracks, poles, wires, and appliances, had maintained and operated in such street a railway doing both urban and interurban business. *Held*, that it would be presumed that the placing of the tracks, poles, and wires in the street was a lawful rather than an unlawful act, and that therefore they were placed in the street under a street railway franchise and as street railway tracks, poles, and wires.

2. In such case, the defendant company having no power to condemn a right of way in such street prior to the enactment of ch. 465, Laws of 1901, it was, so far as abutting owners were concerned, a trespasser in its operation of interurban cars on its tracks at the same time it was doing a street railway business on the same tracks.

3. On an appeal from the award of commissioners appointed in proceedings to condemn all the rights of property which would entitle the owners interested in lots fronting and abutting on a street to damages by reason of the construction, maintenance, and operation on such street of an interurban railway, it appeared, among other things, that the defendant, since 1898, had been doing both an urban and interurban business on its tracks laid in such street; that in 1900 the laying of a double track was expressly authorized by amendment to a street railway franchise theretofore granted; that plaintiff had acquired title to his abutting lot in 1903, and that the proceeding had been instituted in 1904. It further appeared that the commissioners awarded substantial damages to plaintiff and nominal damages to his grantor, and that the defendant appealed from plaintiff's award of damages, but did not include in the notice of such appeal the award to such grantor. *Held:*

(1) The taking by the defendant took place after plaintiff acquired title, and hence the trial court did not err in refusing to dismiss the appeal because plaintiff's grantor was omitted from the notice of appeal, such omission being a mere technical informality and having no substantial or prejudicial effect upon the rights of any person.

(2) The unlawful operation of interurban cars upon the street railway tracks and with street railway appliances during the time defendant possessed no power by statute to take the

rights of abutting owners in the street in question and subject them to the additional burden of an interurban railway was insufficient to bring the case within the rule that where a claim has accrued for damages to an entire tract of land, by reason of the actual construction of a railroad over a part of it, and, before the damages have been assessed or paid, the land is sold, without any provision in respect to them, the right to such damages remains in the vendor.

4. In such case the laying of the double track in 1900, expressly authorized by amendment to the street railway franchise, was no expropriation of the rights of the abutter, no ouster, no exclusion of the true owner, and imposed no additional burden on the street so as to entitle the abutting owner to compensation.

5. In such case it was *held* that the rights of the abutter were not taken at the time the double track was laid in 1900.

6. In such case it was *held* that the enactment of ch. 465, Laws of 1901 (conferring the power of eminent domain upon interurban railways), followed by no change in the former mode of operating the railway and no new notice to the abutting lotowners, no new physical taking and exclusive possession of the tracks for interurban railway purposes, and followed by the continued double and ambiguous character of the operations of the railway, rendered necessary condemnation proceedings to enable defendant to transform its tracks, roadbed, and appliances into interurban tracks, roadbed, and appliances.

7. In such case the situation of the defendant is *held* to be not a holding of exclusive possession under a permissive entry, but the continuing of an ambiguous use or ambiguous operations upon the street after the passage of ch. 465, Laws of 1901. *Stewart v. Milwaukee E. R. & L. Co.* 110 Wis. 540, distinguished.

8. The transmutation *in invitum* of an estate or interest in land into a mere chose in action to be recovered in a condemnation proceeding cannot take place from any double, uncertain, or ambiguous acts of a corporation seeking to exercise the power of eminent domain, or from anything less than taking and holding exclusive possession by one having a delegated power of eminent domain to take and hold for a public purpose to the ouster and exclusion of the true owner and with his consent or tacit acquiescence in the first instance.

9. In a proceeding to condemn all the rights of property which would entitle the owners interested in lots fronting and abutting on a street to damages by reason of the construction, maintenance, and operation on such street of an interurban railway, such use having been, prior to the enactment of ch. 465, Laws of 1901, unlawfully exercised in connection with a lawful use of

street railway cars, tracks, and appliances, *held*, that there was no expropriation of the rights of the abutting lotowners in the street by the mere passage of the law of 1901 nor by the continuation of the unlawful use of the street railway tracks for interurban purposes thereafter.

10. In such case the filing of the petition by the railway company is *held* to have begun the process of taking the land or rights in the street in question, and, after the award of the commissioners was filed, that the taking was completed, and, when the damages are ascertained and paid or tendered, that the taking would be consummated.

11. In a proceeding to condemn all the rights of property which would entitle the owners interested in lots fronting and abutting on a street to damages by reason of the construction, maintenance, and operation on such street of an interurban railway, under the circumstances, stated in the opinion, *held:*

(1) The owners at the time of the filing of the petition for the appointment of commissioners were the persons entitled to damages.

(2) The grantors of such owners were entitled to no damages which could be assessed in such proceeding.

(3) The court erred in directing a verdict in favor of lotowners for nominal damages.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Reversed.*

The appeal is from a judgment entered upon a verdict directed in favor of the appellant for six cents damages and awarding costs to the respondent in a condemnation proceeding. The appellant acquired title to lot 3 in block B of Hadfield's Second addition to Waukesha, abutting on Lincoln avenue, upon September 7, 1903, from one Eugene Horr, who acquired title to the same premises in 1891. The respondent is an electric street and interurban railway corporation, and has been since about 1898 operating electric interurban cars on Lincoln avenue upon tracks laid in that street and with the necessary appliances of poles and wires. On March 3, 1904, the respondent filed in the circuit court for Waukesha county a petition for the appointment of commissioners for the condemnation of all the rights of property which would

entitle the owners and persons interested in the lots fronting and abutting upon Lincoln avenue to damages by reason of the construction, maintenance, and operation on said Lincoln avenue of a double-track interurban railway, but subject to a franchise described or referred to in said petition. The commissioners appointed on this petition appraised the damages of the plaintiff at $128.20, and those of the plaintiff's grantor, Horr, at six cents. The respondent appealed from the plaintiff's award of damages, but did not include in said appeal the award to Horr. The plaintiff did not appeal to the circuit court. The plaintiff moved in the circuit court to dismiss the appeal of the respondent from the award because not taken from the gross award. This motion was denied and plaintiff excepted. The case was then tried on this appeal, and it appeared from the award appealed from that the damages were ascertained, appraised, and determined by the commissioners by reason of the respondent taking, condemning, and permanently appropriating so much of said lot as lies within Lincoln avenue for a right of way for the construction, maintenance, and operation thereon of the double-track interurban railway authorized by respondent's articles of incorporation and its franchises from the city of Waukesha. It further appeared in evidence that the tracks were laid down in said street in 1898 and double-tracked in 1900 and that they were used for street railway purposes. When the interurban cars coming from Milwaukee and passing through Waukesha, or returning to Milwaukee passing through Waukesha, enter within the city boundaries, they do a street-car business, stopping at street crossings on signals to take on and let off passengers, but otherwise are engaged in interurban traffic.

For the appellant there was a brief by *Tullar & Lockney*, and oral argument by *D. S. Tullar* and *Henry Lockney*.

For the respondent there was a brief by *Ryan, Merton & Newbury*, attorneys, and *Clarke M. Rosecrantz*, of counsel, and oral argument by *T. E. Ryan*.

Among other references cited upon the part of the appellant were the following: *Spaulding v. M., L. S. & W. R. Co.* 57 Wis. 304, 14 N. W. 368, 15 N. W. 482; *Morris v. Brewster,* 60 Wis. 229, 19 N. W. 50; *Chinnock v. Stevens,* 23 Wis. 396; *Widner v. Wood,* 19 Wis. 190; *Watson v. M. & M., R. Co.* 57 Wis. 332; *Washburn v. M. & L. W. R. Co.* 59 Wis. 379, 18 N. W. 431; *Sayles v. Davis,* 20 Wis. 302; sec. 1849, Stats. (1898); *Van Slyke v. Trempealeau Co. F. Mut. F. Ins. Co.* 39 Wis. 390; *Hays v. Lewis,* 21 Wis. 663; *Sharp v. Appleton, ante,* p. 16, 113 N. W. 1090; *Murray Hill L. Co. v. M. L., H. & T. Co.* 126 Wis. 14, 104 N. W. 1003; *La Crosse & M. R. Co. v. Seeger,* 4 Wis. 268; *State ex rel. Jenkins v. Harland,* 74 Wis. 11, 41 N. W. 1060; *Campbell v. Dick,* 80 Wis. 42, 49 N. W. 120; *Kaehler v. Dobberpuhl,* 60 Wis. 256, 18 N. W. 841; Bigelow, Estoppel, p. 562, ch. 19; 2 Lewis, Em. Dom. (2d ed.) 1145.

Among other references cited upon the part of the respondent were the following: *Larson v. Superior S. L. R. Co.* 64 Wis. 59; *Allen v. McRae,* 122 Wis. 246, 100 N. W. 12; *Blesch v. C. & N. W. R. Co.* 43 Wis. 183; *Frey v. D., S. S. & A. R. Co.* 91 Wis. 309, 64 N. W. 1038; *Milwaukee & N. R. Co. v. Strange,* 63 Wis. 178, 23 N. W. 432; *Pomeroy v. C. & M. R. Co.* 25 Wis. 641; ch. 465, Laws of 1901.

TIMLIN, J.   The record in this case is very defective in not presenting the complete petition for condemnation nor the franchise ordinance under which the respondent was operating in the streets of Waukesha, but enough can be gathered therefrom to inform the court that it is the same corporation, acting under the same franchise and in the same way as shown in the companion cases decided herewith.   We will assume, therefore, in this case that the respondent is incorporated for the purpose of carrying on the business of an interurban railway and also carrying on the business of a street railway; that prior to laying any tracks or placing any appliances in

the streets of the city of Waukesha the respondent succeeded to the right of a street railway corporation which had from the city of Waukesha a grant of the right to use certain streets, including Lincoln avenue, for street railway purposes only. The tracks, poles, wires, and appliances of an electric interurban railway are similar to those of an electric street railway. The interurban cars are somewhat larger than ordinary street railway cars and are equipped with closets, but otherwise they are the same in their construction and operation as electric street railway cars. At the time the tracks were laid and poles and wires placed in the street the electric interurban railway had no lawful right to construct such tracks or lay such rails for interurban railway traffic without paying damages to the abutting lotowners. *Younkin v. Milwaukee L., H. & T. Co.* 112 Wis. 15, 87 N. W. 861. We must presume that the placing of the tracks, poles, and wires in the street was a lawful rather than an unlawful act, and therefore that they were placed there under the street railway franchise and as street railway tracks, poles, and wires. The respondent as an interurban electric railway had no power to condemn its right of way in the street before April, 1901. Although it operated electric interurban railway cars over these tracks since 1898, at the same time doing a street railway business on these tracks, it was, at least prior to April, 1901, and so far as the abutting owners were concerned, a trespasser in its operation of electric interurban cars upon these street railway tracks. After April, 1901, when there was conferred upon it the power of condemning land lying in a street, it continued this dual character of street railway and interurban railway, and conducted upon the tracks and with the appliances in question both kinds of public service.

The question arises: When was the interest of abutting owners in Lincoln avenue taken for interurban railway purposes? This affects the motion to dismiss respondent's ap-

peal to the circuit court from the award of commissioners, because, if the taking was prior to 1903, when the plaintiff acquired title, the plaintiff's grantor, Horr, was entitled to substantial damages, and his omission from the appeal would have been erroneous under the rule of *Spaulding v. M., L. S. & W. R. Co.* 57 Wis. 304, 14 N. W. 368, 15 N. W. 482. But if Horr was entitled to no damages in this condemnation because the taking occurred after he had parted with his title, his omission from the notice of appeal would be a mere technical informality, having no substantial or prejudicial effect upon the rights of any person. It is, of course, also important to determine this question in order to ascertain whether the plaintiff, *Brickles,* is entitled to any substantial damages, and whether, therefore, the award of nominal damages to him was erroneous.

The situation is very novel, and some examination of precedents will be necessary in order to arrive at a correct solution of this question. In the case of *Wilbur L. Co. v. Milwaukee L., H. & T. Co., ante,* p. 352, 114 N. W. 813, it was ruled that there was no taking prior to the time the Wilbur Lumber Company acquired its title in 1898 after the first tracks were laid. The unlawful operation of electric interurban cars upon the street railway tracks and with the street railway appliances in question during the time the respondent possessed no power by statute to take the rights of abutting owners in the highway in question and subject them to the additional and unauthorized burden of an interurban railway being insufficient to bring the case within the rule of *Pomeroy v. C. & M. R. Co.* 25 Wis. 641, as determined in *Wilbur L. Co. v. Milwaukee L., H. & T. Co., ante,* p. 352, 114 N. W. 813, there are only two other events between the original laying of tracks and the filing of the petition for condemnation which could possibly be considered a taking or expropriation by the respondent. One is when the double track was laid in the year 1900, and the other is

when the act empowering street and interurban railway companies to condemn rights in streets was enacted in April, 1901. But the laying of double tracks was expressly authorized by amendment to the street railway franchise, and they were consequently street railway tracks and not an additional burden on the highway so as to entitle the abutting lotowner to compensation. So there was by this event no expropriation of the rights of the abutter, no ouster, and no exclusion of the true owner. Consequently the rights in the highway were not taken at that time. The other event, namely, the enactment of ch. 465, Laws of 1901, was followed by no change in the former mode of operating the railway and no new notice to the abutting lotowners. It was followed by no physical taking and no exclusive possession of the tracks by the interurban railway or for interurban railway purposes. After the enactment of that law, as before, the respondent, with the same cars, upon the same tracks, and with the same appliances, continued to do a street railway business within the city limits of Waukesha and an interurban railway business through Waukesha and to points outside, stopping the interurban cars at all street crossings upon signal and taking on and discharging passengers. The double and ambiguous character of its operations might leave it in doubt whether it was an electric interurban railway also performing street railway service, or an electric street railway performing also interurban service. But there was no doubt of the character of the visible structures in the highway. They were after the passage of this law, as they were before its passage, street railway tracks, roadbed, poles, and wires. They were not, by the mere enactment of the law and the continued dual character of the use, transformed into interurban tracks, roadbed, poles, and wires.

If we ask what acts of the respondent at and after the passage of the law of 1901 amounted to a taking, we find no invasion of the possession of the original owner, no exclu-

sive use for interurban railway purposes, and no interurban railway structures either placed upon or continued upon the land of the abutting lotowner. It is merely the operation of interurban cars over and upon the tracks of a street railway. This condemnation proceeding became necessary in order to enable the respondent to transform these tracks and this roadbed and appliances into interurban tracks, roadbed, and appliances.

Stress is laid upon the case of *Stewart v. Milwaukee E. R. & L. Co.* 110 Wis. 540, 86 N. W. 163, which is thought to decide that where power to take land by condemnation is conferred upon a corporation which did not theretofore possess such power, this, with continued operation by the corporation, will constitute a taking as of the date of the passage and publication of the law. But in that case there was actual and exclusive possession taken by the corporation by consent of the landowner prior to the passage of the act conferring upon it the power to take and condemn land. At the time of and after the passage of the act it continued such actual and exclusive possession, but neglected to pay for the land or to proceed to exercise its power of condemnation. It was not a case of continuing an ambiguous use or ambiguous operations upon land after the passage of the act, but a case of holding the exclusive possession under a permissive entry. The ruling was that the landowner might upon this showing proceed to condemn upon his own initiative. The element there existing, that of actual physical possession to the exclusion of the owner, is here lacking.

It is said in *Babcock v. C. & N. W. R. Co.* 107 Wis. 280, 83 N. W. 316, that "construction of its track by a railway company over the land of another, when consented to, either expressly or by tacit acquiescence, irrevocably transfers from the owner to the company the permanent right of occupation for operating purposes, leaving to the former owner only the right to obtain compensation in the manner specified" in

sec. 1852, Stats. (1898). By reading this section and the cases construing it, such as *Bohlman v. G. B. & L. P. R. Co.* 30 Wis. 105, it is apparent that this transmutation *in invitum* of an estate or interest in land into a mere chose in action to be recovered in a condemnation proceeding cannot take place from any double, uncertain, or ambiguous acts of the corporation, or from anything less than taking or holding exclusive possession by one having a delegated power of eminent domain to take and hold for a public purpose to the ouster and exclusion of the true owner and with his consent or tacit acquiescence in the first instance. There was, therefore, no expropriation of the rights of the lotowners in the highway by the mere passage of the law of 1901 nor by the continuation of the unlawful use of the street railway tracks for interurban purposes thereafter; but when the respondent on March 3, 1904, filed its petition for condemnation it began the process of taking the lands or rights in the highway in question, and after the award of the commissioners was filed the taking was completed, and when the damages are ascertained and paid or tendered the taking will be consummated.

It follows that the plaintiff is entitled to substantial damages because he was the owner of the land at the time the land or rights in the highway were taken, and that Horr is entitled to no damages which can be assessed in a condemnation proceeding. *Putney Bros. Co. v. Milwaukee L., H. & T. Co., post,* p. 379, 114 N. W. 809. The court below was right in refusing to dismiss the respondent's appeal from the award of commissioners to the circuit court, and wrong in directing a verdict for the plaintiff for nominal damages. This makes the consideration of other alleged errors unnecessary.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial.