GOSA, Appellant, vs. MILWAUKEE LIGHT, HEAT & TRACTION
COMPANY, Respondent.

*January 8—January 28, 1908.*

*Eminent domain: Compensation: Special benefits: Transmutation of
street railway tracks into interurban tracks by condemnation:
Damages: Mitigation.*

1. In a proceeding to condemn and permanently appropriate all the
   rights of property which would entitle the owners and persons
   interested in lots fronting and abutting on a city street to dam-
   ages by reason of the construction, maintenance, and operation
   thereon of a double-track interurban railway, it appeared,
   among other things, that prior to the filing of the petition the
   defendant's roadbed, tracks, poles, and wires on said street
   were in use under a franchise authorizing a street railway busi-
   ness, although the defendant was also conducting an interurban
   business over the same track and with the same appliances.
   *Held,* that the roadbed, tracks, poles, and wires were street
   railway roadbed, tracks, poles, and wires, and lawfully in the
   street, and only their use for interurban traffic was unlawful.
2. In such case it was error to refuse a requested instruction: "You
   are instructed that there is nothing in the evidence in this case
   that shows the existence of any special benefits to the property
   in question, and you are not to allow or consider as an offset
   against plaintiff's damages, if any, any benefits whatever," and
   to give as part of the general charge: "It is for you to deter-
   mine from the evidence in this case, under the instructions
   given you, whether or not there were [at the date of the award
   by the commissioners] any special benefits flowing from the
   operation of a street railway by the defendant company affect-
   ing the market value of such property, if you find from the evi-
   dence that a railway was operated at such time as a street rail-
   way along and in front of said property appreciably affecting
   the market value of said property."
3. The special benefits mentioned in sec. 1848, Stats. (1898), which
   may be offset against damages to the landowner on condemn-
   ing land for an interurban railway are such as are caused by
   the construction of the public work for the installation of
   which it is sought to condemn the land. Specific benefits which
   have no causal connection with such public work are not the
   special benefits referred to in the statute.

4. Where the right to place street railway tracks, poles, wires, and appliances in a street exists by virtue of a fifty-year franchise for the use of such street, granted prior to the time of taking the same for interurban purposes sought to be accomplished by condemnation proceedings, the duty to continue street railway service under such franchise for the remainder of the franchise term survives the condemnation proceedings and continues, notwithstanding the tracks and appliances which were formerly street railway tracks and appliances will become interurban in character by virtue of such condemnation.

5. In condemnation proceedings to transmute street railway tracks and appliances into interurban tracks and appliances, in estimating the abutting owners' damages the existence of the street railway with its roadbed and appliances, and that the street was subject to that burden without compensation to the lot-owner, and to other like burdens which the municipal authorities might in their discretion impose, are to be considered as conditions existing at the time of the taking for the interurban service, but not as special benefits.

6. In such situation the fact that by the limited estate or interest taken by the condemnation proceedings the obligation to continue the street railway service for some years will remain is proper to be considered in mitigation of damages, since the condemnation takes a less estate or interest than would be taken were the proceedings initiated to take the whole use of the street and extinguish the street railway franchise.

7. In such case the perpetual nature of the right acquired by the condemnation, extending indefinitely beyond the time when the street railway franchise must expire, should be considered.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Reversed.*

The appeal is from a judgment rendered upon a verdict for the appellant upon appeal to the circuit court from the award of commissioners in a condemnation proceeding. March 3, 1904, the respondent filed its petition in the circuit court for Waukesha county seeking "to condemn and permanently appropriate all the rights of property which would entitle the owners and persons interested in the lots fronting and abutting upon said Lincoln avenue (or street) . . . to damages by reason of the construction, maintenance, and operation on said Lincoln avenue (or street) of the

double-track railroad authorized by your petitioner's said articles of incorporation and said franchise and as the same has been heretofore constructed and operated." Elsewhere in said petition it appears that the whole street, sixty feet in width, is sought to be taken for the construction, maintenance, and operation thereon of petitioner's double-track electric railway "authorized by its articles of incorporation." The usual order was made on this petition appointing commissioners. September 19, 1904, the commissioners filed their award to the appellant of $99.70 damages, and from this award both parties appealed to the circuit court, where the appellant had a verdict for $65. Costs were taxed in favor of the respondent and set off against these damages, and from the judgment thus arrived at this appeal to this court is taken by the lotowner.

The respondent was incorporated in the latter part of the year 1896 or in the early part of the year 1897 "for the business or purpose of purchasing or otherwise acquiring, constructing, equipping, leasing, maintaining, and operating by electricity or other power street railways for the transportation of passengers, mail, express, merchandise, and other freight in the city and county of Milwaukee and elsewhere in said state, and of purchasing or otherwise acquiring, taking, holding, and operating real and personal property rights, privileges, ordinances, and franchises, and any enterprise suitable for and in furtherance of the business or purposes of the corporation, and for the purpose of acquiring the real and personal property rights, privileges, ordinances, and franchises of any individual or individuals, or of any street railway companies and electric power, light, or heat companies, foreign or domestic, now or hereafter existing," etc. July 27, 1897, the common council of the city of Waukesha, under and pursuant to the power delegated to it by sec. 1862, Stats. (1898), granted by ordinance the use of certain streets of the city of Waukesha to the Waukesha Elec-

tric Railway Company, its successors and assigns, for the term of fifty years and no longer. This ordinance was what is commonly known as a street railway franchise, and contained the usual provisions found in such franchise ordinances; and sec. 9 thereof was as follows:

"The said company, its successors or assigns, shall not operate its lines and railway for any other purpose than that of a passenger railway within the streets of the city of Waukesha, but said company shall be permitted to carry such personal effects as are usually carried by passengers on street railways."

The ordinance was from time to time amended. The last amendment offered in evidence bears date July 11, 1900, and authorizes the laying of a double track for an electric street railway and the occupation of Lincoln avenue in the city of Waukesha. This franchise is referred to in the petition for condemnation, in the award of commissioners, and was offered in evidence by the respondent with a stipulation by counsel "that said franchises are now owned by the defendant company, and have never been declared forfeited, revoked, or annulled, and are now in force for what they are worth."

For the appellant there was a brief by *Tullar & Lockney,* and oral argument by *D. S. Tullar* and *Henry Lockney.*

For the respondent there was a brief by *Ryan, Merton & Newbury,* attorneys, and *Clarke M. Rosecrantz,* of counsel, and oral argument by *T. E. Ryan.*

Among other references cited upon the part of the appellant were the following: *Murray Hill L. Co. v. Milwaukee L., H. & T. Co.* 126 Wis. 14, 104 N. W. 1003; *La Crosse & M. R. Co. v. Seeger,* 4 Wis. 268; *Campbell v. Dick,* 80 Wis. 42, 49 N. W. 120; *Abbott v. Milwaukee L., H. & T. Co.* 126 Wis. 634, 106 N. W. 523; 2 Lewis, Em. Dom. (2d ed.) § 507, p. 1145; *Washburn v. M. & L. W. R. Co.* 59 Wis. 379, 18 N. W. 431.

Among other references cited upon the part of the re-

spondent were the following: *Richardson v. Babcock,* 119 Wis. 141, 96 N. W. 554; *Lowe v. Ring,* 123 Wis. 370, 101 N. W. 698; *Chapman v. O. & M. R. R. Co.* 33 Wis. 629; *Att'y Gen. v. West Wis. R. Co.* 36 Wis. 466; *Wright v. Milwaukee E. R. & L. Co.* 95 Wis. 29, 69 N. W. 791.

TIMLIN, J.   The principal errors assigned upon the appeal to this court and the only errors necessary to be noticed are in refusing to instruct the jury as requested by the appellant and in giving to the jury the instructions hereinafter referred to.   It appeared in evidence that the respondent, a corporation organized as set forth in the statement of facts preceding this opinion and claiming certain rights in the streets of Waukesha under the ordinance there referred to, had been since the year 1898 operating upon the double-track railway in question upon Lincoln avenue in the city of Waukesha electric railway cars.   These cars were employed in interurban railway traffic between Milwaukee and Waukesha Beach and passing through the city of Waukesha.   Within the city of Waukesha there was carried on during all this time with these same cars and appliances and upon these same tracks an ordinary street railway business by stopping at any street corner upon signal to receive and discharge passengers for a five-cent fare, except in the case of some special interurban trains, which occasionally and during the summer excursion season ran through the city of Waukesha without stopping.   An electric street railway requires the same tracks, poles, wires, and appliances as an electric interurban railway.   In physical appearance they are not distinguishable.   But the law was settled in this state that an electric street railway in a street was not an easement additional to the ordinary easement for public travel or a burden on the highway for which the abutting lotowner was entitled to compensation.   *La Crosse City R. Co. v. Higbee,* 107 Wis. 389, 83 N. W. 701.   The contrary rule prevailed with

reference to the use of a public highway by a corporation organized like respondent (*Chicago & N. W. R. Co. v. M., R. & K. E. R. Co.* 95 Wis. 561, 70 N. W. 678), and for an electric interurban railway carrying only passengers upon country roads (*Zehren v. Milwaukee E. R. & L. Co.* 99 Wis. 83, 74 N. W. 538), and interurban traffic upon a city street (*Younkin v. Milwaukee L., H. & T. Co.* 112 Wis. 15, 87 N. W. 861). The roadbed, tracks, poles, and wires on Lincoln avenue were, prior to and up to the time of condemnation, street railway roadbed, tracks, poles, and wires, and lawfully in the street. Only the use of the same for interurban traffic was unlawful. *Brickles v. Milwaukee L., H. & T. Co., ante,* p. 358, 114 N. W. 810.

The appellant requested the trial court to charge the jury as follows:

"You are instructed that there is nothing in the evidence in this case that shows the existence of any special benefits to the property in question, and you are not to allow or consider as an offset against the plaintiff's damages, if any, any benefits whatever."

The trial court refused this instruction and the appellant took due exception, and when the charge was given to the jury much was said in a general way concerning general benefits and special benefits, followed by this sentence:

"It is for you to determine from the evidence in the case, under the instructions given you, whether or not there were, September 19, 1904, any special benefits flowing from the operation of a street railway by the defendant company affecting the market value of such property, if you find from the evidence that a railway was operated at such time as a street railway along and in front of said property appreciably affecting the market value of said property."

The jury were thus instructed that they were at liberty to offset the damages of the appellant, if any such damages they found, by alleged special benefits in no way arising out of or flowing from the construction or operation of an interurban

railway or the taking of appellant's land for an interurban railway. The special benefits mentioned in sec. 1848, Stats. (1898), which may be offset against damages have been defined and discussed in *Milwaukee & M. R. Co. v. Eble,* 3 Pin. 334, and *Washburn v. M. & L. W. R. Co.* 59 Wis. 364, 18 N. W. 328. Within the rule of these cases there was no evidence offered in the case at bar which would authorize the jury to make any deduction from damages on account of special benefits, because no special benefits were shown. The instruction requested by appellant should have been given, and its refusal was error.

The charge to the jury that the operation of a street railway on Lincoln avenue might be considered as a special benefit was also erroneous. The special benefits mentioned must be such as are caused by the construction of the public work for the installation of which it is sought to condemn the land. Special benefits which have no causal connection with this are not the special benefits referred to in the statute. *Minn. Cent. R. Co. v. McNamara,* 13 Minn. 508 (Gil. 468). The right to place street railway tracks, poles, wires, and appliances in this street existed by virtue of the grant of the use of the street to the Waukesha Electric Railway Company prior to and up to the time of the taking of the same for interurban railway purposes sought to be accomplished in this condemnation. The duty to continue such street railway service under said franchise for the remainder of the fifty-year term will survive this condemnation proceeding and continue, notwithstanding that the tracks which were formerly street railway tracks will have become interurban railway tracks, and the poles, wires, and appliances, which were formerly street railway poles, wires, and appliances, will have become interurban railway poles, wires, and appliances by virtue of this condemnation. *Marsh v. Milwaukee L., H. & T. Co., post,* p. 384, 114 N. W. 804. This does not mean that the plaintiff is entitled to any large or extravagant

amount of damages, but that the case must be submitted to ·
the jury upon correct principles of law.

In estimating the plaintiff's damages the existence of the
electric street railway with its roadbed, poles, wires, and ap-
pliances upon Lincoln avenue up to and on September 19,
1904, and the fact that the street was subject to that burden
without compensation to the lotowner, and to other like bur-
dens which the municipal authorities might in their discre-
tion impose, are to be considered as conditions existing at
the time of the taking by the respondent of the tracks, poles,
wires, and appliances for interurban railway tracks, poles,
wires, and appliances, but not as special benefits. The fact
that by the limited estate or interest taken by these condemna-
tion proceedings the obligation to continue the street rail-
way service for some years will remain is proper to be con-
sidered in mitigation of damages, because it thereby appears
that this condemnation proceeding takes a less estate or in-
terest in the street than would an interurban railway, which
by its condemnation proceedings took the whole use of the
street and extinguished by condemnation the street railway
franchise. On the other hand, the perpetual nature of the
right acquired by this condemnation, extending indefinitely
beyond the time when the street railway franchise will ex-
pire, is also to be considered. In short, these things are to
be considered in the estimate of damages as conditions affect-
ing the property, and even when they go to ameliorate dam-
ages they should not be considered at all as special benefits.

*By the Court.*—The judgment of the circuit court is re-
versed, and the cause remanded for a new trial.