PIERCE, Respondent, vs. CHICAGO & MILWAUKEE ELECTRIC RAILROAD COMPANY, Appellant.

*January 5—January 26, 1909.*

*Eminent domain: Electric railroads: Right of way: Uses: Admissibility of evidence: Instructions to jury: Remote and speculative damages: Witnesses: Competency: Experts: Qualifications: Hypothetical questions: Appeal and error: Review: Prejudicial error: Damages and benefits: Uses of land taken: Values: Averages.*

1. In proceedings to condemn a right of way for an electric railroad, evidence showing that the defendant railroad was connected with and had traffic arrangements with commercial railroads, of the probable location of its freight yards and their proximity to such other railroads, and what under its charter were its powers and privileges as to its right to use motive power other than electric in its use of the strip of land sought to be condemned, is *held* admissible to show what use the defendant might make of this strip.

2. In proceedings to condemn a right of way for an electric railroad, the nature of the use of the strip sought to be condemned is material on the question of damages to the landowner's adjoining property, if it appears that a particular use would naturally tend to depreciate its market value.

3. In proceedings to condemn a right of way for an electric railroad, instructions to the jury informing them that evidence that the defendant's railroad was connected with and had traffic arrangements with commercial railroads, of the probable location of its freight yards and their proximity to such other railroads, and what under its charter were its powers and privileges as to its right to use motive power other than electric in its use of the strip of land sought to be condemned, could only be considered on the question of the market value of the land not taken, are *held* appropriate and sufficient to inform the jury of its duty in considering such evidence.

4. In proceedings to condemn a right of way for an electric railroad, items of evidence of the cost of replacing sheds and fences taken as part of the strip, and of the danger to life and property consequent upon a railroad farm crossing, are not in themselves elements for which damages can properly be allowed as items of injury to the adjoining land, and in arriving at the damages are to be rejected as too remote and conjectural as causes of depreciation.

5. In such case the court instructed the jury, in substance, that such class of evidence was only "received as showing reasons upon which witnesses testifying thereto base their opinions that the fair market value of the land not taken was depreciated because of the presence of the railway, and may be considered by you in explanation of their opinions as to valuation and depreciation, to assist you in estimating the value of such opinions, and to aid you in measuring the real loss to the owner. Such facts do not constitute a basis for separate and distinct damages, for they are too remote and speculative;" that the damage to the adjoining land, if any, was the actual depreciation of it in market value at the time of the award on account of the taking of the strip for railroad uses, and that the fair market value of the strip taken included trees and improvements. *Held*, under such positive directions and instructions, that it is presumed that the jury understood that they were not to assess any special damages on account of such conjectural or remote conditions, and that they followed such explicit instructions in arriving at their verdict.

6. Testimony of a witness qualifying as an expert as to values of

farm lands, that he had owned real estate in a city distant about one quarter of a mile, that he had owned acreage property, that he had theretofore bought and sold some, and that he had made inquiries as to market values, shows sufficient information on the subject to enable him to express his opinions on the questions covered, the grounds of his opinions and their weight being for the determination of the jury.

7. In proceedings to condemn lands for an electric railroad, a hypothetical question as to values, stated in the opinion, is *held* not to embrace improper items of evidence, to contain sufficient facts to enable the witness to form an opinion, and not to be misleading or confusing.

8. In proceedings to condemn lands for an electric railroad, where a witness had fully testified on the questions of the adaptability of the lands, a farm, for platting and how to plat it after the taking of the strip for railroad purposes, it is not prejudicial error to sustain an objection to a question: "Would you, as a real-estate man, advise the owner of the farm to cut it into acre tracts and sell them off on Asylum avenue?" since an answer to the question would at most be expressive of the witness's opinion or advice regarding the advisability of platting and cutting off acre tracts on Asylum avenue.

9. If such question was designed to elicit an answer respecting the market value of the land in acre lots, the ruling was also proper, because the question failed to disclose any such purpose and an appropriate answer thereto could not give such information.

10. In proceedings to condemn lands for an electric railroad, portions of instructions to the jury excepted to, stated in the opinion, which were only parts of sentences or paragraphs embracing one subject and which should be considered in connection with the other parts, are *held* not to be subject to the claim that they conveyed the idea that the jury were not to take into consideration any enhanced value of plaintiff's lands at the time of taking by reason of the probable construction of the road.

11. In proceedings to condemn land for an electric railroad, instructions to the jury, in substance, that the railroad company has the right under the law to occupy and use such land for all the purposes prescribed in its charter and articles of incorporation, that a present omission to exercise all such rights does not reduce the damages actually sustained, and that the award made by the jury should cover the plaintiff's damages for all time and every authorized use, in connection with information that the jury were not to consider any remote, speculative, and improbable uses, but were to confine their considera-

tion to the actual facts of the case, are *held* to embody the rule applicable to the situation, correctly embrace the elements of the case bearing on the question at issue, and to sufficiently cover defendant's requests on that subject.

12. In proceedings to condemn land for an electric railroad, refusals to instruct and the instructions given which pertained to duplication of damages, the defining of fair market values, the value of the strip actually taken, the materiality of sales of other property in connection with opinion evidence of witnesses as to market value, the opinions of witnesses as to the damages to the remainder of the land based on the depreciation of the market value of the whole, the adaptability of the remainder of the land for platting because of the railroad crossing, and its availability for present and immediate uses, are *held* not to have been erroneous.

13. In proceedings to condemn lands for an electric railroad, instructions to the jury that they were not to agree in advance to add the values as fixed by the various witnesses, to divide the total by the number of witnesses, and to adopt the result as the true value, but that they were "to consider all credible evidence, facts, and circumstances in the case, and therefrom find and determine the fair market value of the land taken and the depreciation, if any, to the fair market value of the land not taken," are *held* to be an appropriate and correct submission, and not open to the objection that thereby the court informed the jury that they could take an average of the fair market values testified to by the various witnesses as the actual market values of the property involved.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Affirmed.*

This is an appeal from a judgment awarding the respondent $6,793.58 as his damages for the condemnation for railroad purposes of a strip of land 150 feet wide across the corner of his farm. The farm embraces about eighty acres, lying along a public highway, and is from one fourth to one half a mile from the limits of the city of Racine. Asylum avenue, the public highway to the east of the land, runs from the city in a southwesterly direction and makes a sharp angle with the northern boundary of the land. The other boundaries of the land run north and south and east and west. The right of way cuts off at the northeast corner a

triangular piece of land containing about 1.92 acres. The northern forty-four and one-half acres of the remainder of the tract, lying west of the strip taken, were cut off from access to Asylum avenue by the condemnation. The intersection of the railroad right of way with Asylum avenue is east of the south line of a large and substantial two-story brick house facing the avenue. The house is eighty-seven feet from the nearest point of the avenue, and with the other farm buildings lies north of the point of intersection of the right of way and the avenue. Where the right of way on the south enters the property the grade of the railroad is six inches lower than the grade of the avenue. The grade of the railroad at the northern boundary of the property is two feet and eight inches below that of the land. A number of shade trees upon the property were taken and destroyed. The small triangular piece cut off by the right of way has a frontage of 650 feet on Asylum avenue. The right of way occupies 256 feet of the frontage of the farm on the avenue, and the land west of the right of way has left a frontage on the avenue of 594 feet. The evidence as to the value of the farm varied from $300 to $1,000 per acre. The commissioners appointed upon appellant's petition fixed the value of the land taken, with its improvements, at $1,775, and the damages to the balance of the farm at $2,800. On the appeal to the circuit court the jury fixed respondent's compensation and damages at $6,500, for which judgment was awarded. This is an appeal from the judgment on the verdict.

For the appellant there was a brief by *Simmons, Nelson & Walker,* and oral argument by *John B. Simmons.*

For the respondent there was a brief by *Kearney, Thompson & Myers,* and oral argument by *T. M. Kearney* and *W. D. Thompson.*

SIEBECKER, J. It is contended that evidence showing that the defendant railroad is connected and has traffic ar-

rangements with commercial railroads, and evidence of the probable location of its freight yards and their proximity to such other railroads, and what under its charter were its powers and privileges as to its right to use motive power other than electric in its use of the strip of land sought to be condemned, was erroneously received and submitted to the jury.    All of this evidence was manifestly admitted to show what use the defendant might make of this strip.    The nature of the use of the strip is material on the question of damages to plaintiff's adjoining property, if it appears that a particular use would naturally tend to depreciate its market value.    We regard this evidence as pertinent to this question, and it was properly received.    The court informed the jury that this class of evidence could only be considered on the question of the market value of the land not taken. This was an appropriate instruction and was sufficient to inform the jury of its duty in considering this evidence.

The plaintiff was permitted to state in evidence the cost of replacing sheds and fences taken as part of the strip. Another witness testified to the danger to life and property consequent on a railroad crossing a farm.    These items of evidence are not in themselves elements for which damages can properly be allowed as items of injury to the adjoining land, and in arriving at the damages are to be rejected as too remote and conjectural as causes of depreciation.    The jury were informed that this class of evidence was only "received as showing reasons upon which witnesses testifying thereto base their opinions that the fair market value of the land not taken was depreciated because of the presence of the railway, and may be considered by you in explanation of their opinions as to valuation and depreciation, to assist you in estimating the value of such opinions, and to aid you in measuring the real loss to the owner.    Such facts do not constitute a basis for separate and distinct damages, for they are too remote and speculative."    The court also repeatedly instructed the jury that the damages to the ad-

joining land, if any, was the actual depreciation of it in
market value at the time of the award on account of the tak-
ing of the strip for railroad uses, and that the fair market
value of the strip taken included trees and improvements.
Under these positive directions and instructions it is a rea-
sonable inference that the jury understood that they were
not to assess any special damages on account of these con-
jectural or remote conditions, and that they followed the ex-
plicit directions of the court. *Hutchinson v. C. & N. W.
R. Co.* 41 Wis. 541.

Another contention is that the witness Norton, whom
plaintiff examined on the question of land values and dam-
ages to adjoining lands, was not qualified to give opinion
evidence on these subjects because of a lack of showing that
he had any knowledge of this kind of property and of its
market value. This witness had testified before these in-
quiries were propounded to him that he had owned real
estate in the city of Racine, that he had owned acreage prop-
erty, that he had theretofore bought and sold some, and that
he had made inquiries as to market values. This showed
sufficient information on the subject to enable him to express
his opinions on the subjects covered. The grounds of his
opinions were before the jury, and the weight of his evidence
was properly submitted to them for determination. *Died-
rich v. N. W. U. R. Co.* 47 Wis. 662, 3 N. W. 749; *Stolze
v. Manitowoc T. Co.* 100 Wis. 208, 75 N. W. 987.

An exception is urged to a hypothetical question pro-
pounded to several witnesses to obtain their opinions on the
interrogatory of whether or not the fair market value of the
remainder of plaintiff's farm had been depreciated by the
taking of the strip in question for railroad purposes. The
exception is urged upon the ground that it embraced facts
not properly before the jury, other facts not covered by the
evidence, and that it did not embrace all the evidentiary
facts necessary to enable the witnesses to give an opinion on

this question. The question is not open to the objection urged. Examination satisfies us that it does not embrace improper items of evidence, and that it contains sufficient facts to enable the witnesses to form an opinion therefrom of the fair market value of the remainder of the farm at the time of the taking of the strip for railroad right of way. In form and substance the question cannot be said to be misleading or confusing, as claimed, nor does the reference therein to the north forty-four and one-half acre part of the farm as descriptive of part of the property convey the idea that it was segregated from the rest in fixing a fair market value on the remainder of the land. It is manifest that such reference was only to designate it as a component part of the remainder.

An objection was sustained to the following question propounded by the defendant to one of its witnesses: "Would you, as a real-estate man, advise the owner of the *Pierce* farm to cut it into acre tracts and sell them off on Asylum avenue?" This is alleged as prejudicial error. We cannot so regard it. An answer to the question would at most be expressive of the witness's opinion or advice regarding the advisability of platting and cutting off acre tracts on Asylum avenue. The witness had fully testified on the questions of the adaptability of the farm for platting and how to plat it after the taking of the strip for railroad purposes. This covered the inquiry embraced in this question, and an answer could have added nothing to his prior statements respecting it. If the question was designed to elicit an answer respecting the market value of the land in acre lots, then the ruling was proper, because the question fails to disclose any such purpose and an appropriate answer thereto could not give such information.

Numerous exceptions to refusals to instruct the jury and to the instructions given are urged as prejudicial error. A number of these alleged errors pertain to instructions given

in submitting evidence to which objection had been made by appellant, and others are exceptions to the refusal of the court to give requested instructions on such evidence. We find no error in these rulings, and in the light of the foregoing consideration need not further consider them.

It is averred that it was error to instruct the jury that they were not "to consider general benefits, if any, which may accrue to the property here in question, because of the location of the railroad and buildings in that vicinity," that "such general benefits may consist of an increase in value or salability of the lands common to the neighborhood or community generally," and that they should "allow plaintiff such sum as will make him good as if such railroad had not been located upon his land and had passed over adjoining lands in that vicinity." These portions of the instructions given to the jury are only parts of sentences or paragraphs embracing one subject and should be considered in connection with the other parts. We find no grounds to sustain appellant's claim that these instructions conveyed the idea to the jury that they were not to take into consideration any enhanced value of plaintiff's land at the time of taking by reason of the probable construction of the road. The instruction as a whole informed the jury correctly that any general benefits from the building of the railroad resulting to plaintiff as one of the community generally were not to be deducted from the amount found to be the depreciation suffered by the remainder of his property by reason of the location of the railroad upon the strip taken. The jury were clearly informed that the recovery was limited to the fair market value of the strip at the time of taking, and that the damages to the remainder were restricted to the depreciation, if any, in its fair market value at the time of its condemnation. This is in accord with the rule approved by this court. See *Gosa v. Milwaukee L., H. & T. Co.* 134 Wis. 369, 114 N. W. 815.

Pierce v. Chicago & Milwaukee E. R. Co. 137 Wis. 550.

It is urged that the court erred in submitting to the jury and informing them that they might properly consider the evidence that "the railroad company has the right under the law to occupy and use said tract for all the purposes prescribed in its charter and articles of incorporation;" that a present omission to exercise all such rights does not reduce the damages actually sustained, and that the award made by them should cover the plaintiff's damages for all time and every authorized use. In this connection the court informed the jury that they were not to consider any remote, speculative, and improbable uses, but were to confine their consideration to the actual facts of the case. These directions embody the rule applicable to the situation, correctly embrace the elements of the case bearing on the question at issue, and sufficiently cover appellant's requests on the subject. We do not find that the court placed undue emphasis on the fact of the possible use of steam as a motive power, so misled the jury in its deliberations, and thereby caused it to return a verdict induced by passion and prejudice.

Our attention is directed to a number of exceptions to refusals to instruct and to portions of the instructions given which pertain to the duplication of damages, the defining of fair market value, the value of the strip of land actually taken, the materiality of sales of other property in connection with opinion evidence of witnesses as to market value, the opinions of witnesses as to the damages to the remainder of the farm based on the depreciation of the market value of the whole, the adaptability of the remainder of the land for platting because of the railroad crossing, and its availability for present and immediate uses. An examination fails to disclose that the jury were improperly instructed on these points and that the court improperly rejected such requests. Further elaboration of these subjects is not required.

The appellant strenuously urges that the court informed the jury that they could take an average of the fair market

values testified to by the various witnesses as the actual mar-
ket value of the property involved.   We do not deem the
court's charge on this point susceptible of this interpreta-
tion.   The jury were informed that they were not to agree
in advance to add such values as fixed by the several wit-
nesses, to divide the total by the number of witnesses, and to
adopt the result as the true value; but they were instructed
"to consider all the credible evidence, facts, and circum-
stances in the case, and therefrom find and determine the
fair market value of the land taken and the depreciation, if
any, to the fair market value of the land not taken."   This
is an appropriate and correct submission of this question,
and no error was committed in refusing the instructions re-
quested by the defendant on this question.

A review of the whole evidence and the alleged exceptions
convinces us that the court committed no prejudicial error
and that the verdict is not contrary to the clear preponder-
ance of the evidence.

*By the Court.*—Judgment affirmed.