Marsh, Appellant, vs. Milwaukee Light, Heat & Traction Company, Respondent.

*January 8—January 28, 1908.*

*Eminent domain: Nature and extent of right taken by interurban railway in city street: Existing street railway franchise: Statutes: Construction: Instructions to jury: Prejudicial error: Damages: Rule: Measure.*

**1.** A railroad or other public or *quasi*-public corporation in the condemnation of land is not required in every case to assert its full power of condemnation given it by statute, but may lessen or limit within a reasonable degree the estate or right in the land taken by the condemnation.

**2.** Sec. 1863a, Stats. (1898), authorizes electric railroad corporations to exercise the power of eminent domain and in the same manner as ordinary commercial railways, but excepts from this authority the condemnation of rights in city streets. By amendment (ch. 306, Laws of 1899; ch. 465, Laws of 1901; and ch. 497, Laws of 1905) the restriction as to streets was so modified that, where the use of such street had been first duly granted to the electric railway company by a franchise duly passed by the common council of the city, the power of condemnation was not restricted. Defendant, an electric interurban railway, after it had, for several years, carried on its interurban business over a street railway system owned by it, filed its petition for the condemnation of so much of the right, title, and interest of the abutting owners as was sufficient for the construction, maintenance, and operation of its interurban system, the averments of the petition being stated in the opinion. *Held:*

(1) The averments of the petition relieved the court from determining whether, under such statutes, the interurban railway corporation had power to condemn a mere right to run electric interurban cars over the tracks of an ordinary street railway and have the damages of the abutting owners assessed accordingly.

(2) The averments of the petition, together with the power given by such statutes, amply showed that the interurban railway corporation had by such petition condemned and taken, subject to the appraisal of damages and the special provisions of sec. 1836, Stats. (1898)—recognizing that the exclusive use and possession of a highway is not acquired by condemnation, but that other public uses continue unimpaired, or only im-

paired so far as absolutely necessary,—a right of way in the
street for its roadbed and appliances, not during the life of the
street railway franchise, but permanently.

(3) The defendant railway having in its petition recognized
the franchise under which the street railway was operated on
the same roadbed and with the same appliances with which it
was operating its interurban traffic and made it one of the
bases of such petition, acquired by the condemnation in ques-
tion a right to construct and maintain its interurban railway,
subject to the duty to continue the operation of street railway
cars during the life of such franchise.

3. In such case it was error to limit plaintiff's damages to those sus-
tained by the mere maintenance and operation of interurban
railway cars over street railway tracks in front of her premises.

4. In such case it was error for the court to instruct the jury as
stated in the opinion and to refuse requested instructions, also
stated in the opinion.

5. In a proceeding to condemn so much of the right, title, and in-
terest in a city street of the abutting owners as is sufficient for
the construction, maintenance, and operation of an interurban
railway, the street already being occupied by street railway
tracks and appliances in use for both urban and interurban
traffic, it is *held* that the damages should be estimated with ref-
erence to conditions lawfully existing at the time of filing the
award of the commissioners, including the existence and opera-
tion of the street railway in the street in front of the plaintiff's
premises, and with reference to the change made by the taking
when completed, including the substitution of an interurban
railway roadbed, track, and appliances permanently upon the
street, but with the duty on the part of the railway company to
continue the street railway service; such damages to be meas-
ured by the difference, if any, between the market value of the
property in its former condition and its market value with the
condemnation completed.

APPEAL from a judgment of the circuit court for Wau-
kesha county: JAMES J. DICK, Circuit Judge. *Reversed.*

The appeal is from a judgment rendered upon a verdict
for the appellant upon appeal to the circuit court from the
award of commissioners in a condemnation proceeding.
March 3, 1904, the respondent filed its petition in the cir-
cuit court for Waukesha county seeking "to condemn and
permanently appropriate all the rights of property which

would entitle the owners and persons interested in the lots fronting and abutting upon said Lincoln avenue (or street) . . . to damages by reason of the construction, maintenance, and operation on said Lincoln avenue (or street) of the double-track railroad authorized by your petitioner's said articles of incorporation and said franchise, and as the same has been heretofore constructed and operated." Elsewhere in said petition it appears that the whole street, sixty feet in width, is sought to be taken for the construction, maintenance, and operation thereon of petitioner's double-track electric railway "authorized by its articles of incorporation." The usual order was made on this petition appointing commissioners. September 19, 1904, the commissioners filed their award to the appellant of $265 damages, and from this award both parties appealed to the circuit court, where the appellant had a verdict for $250. Costs were taxed in favor of the respondent and set off against these damages, and from the judgment thus arrived at this appeal to this court is taken by the lotowner.

The respondent was incorporated in the latter part of the year 1896 or in the early part of 1897 for the business or purpose of purchasing or otherwise acquiring, constructing, equipping, leasing, maintaining, and operating by electricity or other power street railways for the transportation of passengers, mail, express, merchandise, and other freight in the city and county of Milwaukee and elsewhere in said state, and of purchasing or otherwise acquiring, taking, holding, and operating real and personal property rights, privileges, ordinances, and franchises, and any enterprise suitable for and in furtherance of the business or purposes of the corporation, and for the purpose of acquiring the real and personal property rights, privileges, ordinances, and franchises of any individual or individuals, or of any street railway companies and electric power, light, or heat companies, foreign or domestic, now or hereafter existing," etc.    July 27, 1897, the common council of the city of Waukesha, under

and pursuant to the power delegated to it by sec. 1862, Stats. (1898), granted by ordinance the use of certain streets of the city of Waukesha to the Waukesha Electric Railway Company, its successors and assigns, for the term of fifty years and no longer. This ordinance was what is commonly known as a street railway franchise, and contained the usual provisions found in such franchise ordinances; and sec. 9 thereof was as follows:

"The said company, its successors or assigns, shall not operate its lines and railway for any other purpose than that of a passenger railway within the streets of the city of Waukesha, but said company shall be permitted to carry such personal effects as are usually carried by passengers on street railways."

The ordinance was from time to time amended. The last amendment offered in evidence bears date July 11, 1900, and authorizes the laying of a double track for an electric street railway and the occupation of Lincoln avenue in the city of Waukesha. This franchise is referred to in the petition for condemnation, in the award of commissioners, and was offered in evidence by the respondent, and is still in force.

For the appellant there was a brief by *Tullar & Lockney,* and oral argument by *D. S. Tullar* and *Henry Lockney.*

For the respondent there was a brief by *Ryan, Merton & Newbury,* attorneys, and *Clarke M. Rosecrantz,* of counsel, and oral argument by *T. E. Ryan.*

TIMLIN, J. The appellant assigns error because the trial court refused to instruct the jury as requested by her counsel and in giving certain instructions hereinafter noted. Some of these requests were properly refused, but among the instructions requested were the following:

"Said plaintiff is entitled in this action to recover damages, if any there be, for the taking and appropriating by the defendant company of a portion of said Lincoln avenue as a

right of way for the location of its tracks used in operating
its said interurban railway."

"The legal effect of this proceeding by the defendant com-
pany is the acquisition by said company of a right of way for
its interurban street railroad pursuant to the privileges
granted by the city of Waukesha, and the acquiring by said
defendant company for the purpose of conducting its trans-
portation business of a perpetual interest in the real estate
of the plaintiff. This action of the defendant is not based
on any rights or privileges which have been bestowed on it
by the said city for affording facilities to persons to pass and
repass on the streets as a public highway; but it is taking
property under the power of eminent domain, for which it
must indemnify plaintiff."

After refusing the foregoing requests the circuit judge
brought this question to a sharp issue by instructing the jury
as follows:

"It is undisputed that the defendant company is the owner
of the franchises granted by the said city of Waukesha for
the construction and operation of a street railway in said
city and that the same are now in force and were in force at
the time it laid its single and double tracks in front of and
along the said described premises on said Lincoln avenue,
and that such franchises authorize said company to lay such
tracks on said Lincoln avenue, a public street of said city,
and to operate on said tracks electric cars for street railway
purposes; and the plaintiff is not entitled in this action to
any damages for the laying of such tracks in front of his said
property, or for the placing of poles and wires for the opera-
tion of a street railway line for the operation of electric cars
for street railway purposes thereon, or for the operating of
street railway cars thereon. And the plaintiff is only en-
titled to recover in this action for such damages as any of you
shall find from the evidence he has sustained by reason of the
defendant company maintaining and operating interurban
railway cars over and upon said tracks in front of and along
the said premises of the plaintiff over and above any damages
which you may find from the evidence resulted to said prem-
ises from the construction and operation of such railway for

street railway purposes, if you find from the evidence the railway in front of said premises was a street railway operated as such before it was operated as an interurban railway, or was a street railway operated as such in connection with the operating of said railway as an interurban railway, in front of said premises on said Lincoln avenue."

The questions arising upon the refusal of said instructions and upon the giving of said charge above quoted are preserved by sufficient exceptions. Waiving criticism on account of verbal inaccuracies, there is presented by the foregoing exceptions the question of what estate or interest in the highway is sought to be acquired and will be acquired by the condemnation proceedings in question. Is it a right to maintain in perpetuity interurban railway tracks, poles, and wires in this street, or is it a mere right to operate interurban railway cars upon tracks, poles, and wires which will remain street railway tracks, poles, and wires notwithstanding such operation for the next forty years, or for the unexpired portion of the fifty-year term of the street railway franchise? If the latter, will a new condemnation proceeding be necessary at the expiration of the street railway franchise? If the former, will the street railway franchise be taken and extinguished by this condemnation? If the street railway franchise be taken and extinguished by this condemnation proceeding, must the abutting landowners be compensated for this deprivation of street railway facilities?

Consulting sec. 1863a, Stats. (1898), for the purpose of ascertaining the scope of this condemnation proceeding by an electric railroad corporation, we find the corporation authorized to acquire by condemnation such real estate and other property as may be necessary for the construction, maintenance, and operation of its railroad and of the stations, depot grounds, and other accommodations reasonably necessary to accomplish the objects of its incorporation. All the provisions of the statutes relating to the exercise of em-

inent domain by railroad companies are made to apply to electric railroad corporations, but this power did not extend to the condemnation of any rights in any street. This act was amended by ch. 306, Laws of 1899, ch. 465, Laws of 1901, and ch. 497, Laws of 1905. By such amendments the restriction above noted with reference to streets was so modified that, where the use of such street had been first duly granted to the electric railway company by a franchise duly passed by the common council of the city, the power to condemn was not restricted. The delegation of the power of eminent domain by the state to the electric railway corporation was also modified so as to read as follows:

"Any street or electric railway corporation shall have the power to lay out its right of way not exceeding one hundred feet in width and acquire the same by condemnation and to construct its railway thereon."

Also:

"Any such street or electric railway corporation may acquire . . . by condemnation and may hold or use such real estate or other real or personal property as may be necessary for the construction, maintenance and operation of its railroad and of the stations, depot grounds and other accommodations reasonably necessary to accomplish the objects of incorporation; and when reasonably necessary may take and acquire by condemnation or otherwise the right to run its cars over any bridge owned by any city of the second, third and fourth classes, towns and villages, and the approaches thereto on the rails of any other street or electric railway which it may meet, join, intersect or cross."

It is also provided that

"wherever such corporation has constructed its railway on any street or highway under a franchise granted to it by any town or village board or city council, such corporation shall not during the term of such franchise abandon or discontinue any part of such railway on a public street or highway within any town, village or city without the consent of the proper town or village board or city council."

The petition for condemnation in the case at bar, by means of which the respondent exercised its delegated power of eminent domain, states, among other things, that the respondent has in good faith already constructed its railroad over Lincoln avenue, so that one of its side-tracks is south of the center line of that street, and it has erected and now maintains poles, wires, and feeders and other electrical equipment used by it in the operation of its railroad, and that it requires for the purpose of constructing and operating its railroad so much of the right, title, and interest of the abutting owners on Lincoln avenue as is sufficient for the construction, maintenance, and operation thereon of the double-track electric railway authorized by respondent's articles of incorporation, and so much as is sufficient for the construction and maintenance of the necessary electrical equipment for the conduct of electrical power, including poles, wires, cables, feeders, and fixtures, and including the right to send and convey thereby currents of electricity from the power house of respondent to points beyond the city of Waukesha. These averments are industriously repeated in the petition. They relieve us from the necessity of determining whether, under the statutes above referred to, the respondent has power to condemn a mere right to run electric interurban cars over the tracks of an ordinary street railway and have the damages of abutting lotowners assessed accordingly, because here manifestly the respondent is not attempting any such thing. The averments of the petition, together with the power given respondent by the statute, amply show that the respondent has by such petition condemned and taken, subject to appraisal of damages by the commissioners and subject to the limitations hereinafter stated, a right of way in Lincoln avenue for its roadbed, tracks, poles, and wires, not during the life of the street railway franchise, but permanently. But a railroad or other public or *quasi*-public corporation in the condemnation of land is not required in

every case to assert its full power of condemnation given it
by statute, but may lessen or limit within a reasonable degree
the estate or right in the land taken by condemnation. *Jones
v. Erie & W. V. R. Co.* 169 Pa. St. 333, 32 Atl. 535; *Jones
v. Erie & W. V. R. Co.* 144 Pa. St. 629, 23 Atl. 251.

The general railroad condemnation statutes authorizing
the placing of tracks in a public highway have been con-
strued to only authorize such taking as is not inconsistent
with the existence of lawful public uses of the highway, at
least where the taking of a greater estate or interest or of ex-
clusive possession was not absolutely necessary to the con-
struction of the railroad. *Bussian v. M., L. S. & W. R. Co.*
56 Wis. 325, 14 N. W. 452. The special provisions of sec.
1836, Stats. (1898), relating to ordinary commercial rail-
roads and the construction of the same upon highways, rec-
ognize that the exclusive use and possession of the highway
is not acquired by condemnation, but that other lawful public
uses continue unimpaired, or only impaired so far as abso-
lutely necessary. These provisions of the general condemna-
tion statutes apply by direct reference to condemnation of
rights of way in highways by electric interurban railways.
In addition to this the respondent, having recognized the
franchise ordinance of July 27, 1897, in its petition for con-
demnation and made it one of the bases of such petition,
must be held to have acquired by the condemnation in ques-
tion a right to construct and maintain interurban railway
tracks, roadbed, poles, and wires on Lincoln avenue, subject
to the continuance of all the duties imposed by said ordi-
nance, including the duty to continue the operation of street
railway cars at the times and upon the terms therein speci-
fied. But having exercised its power of eminent domain to
take for the purpose of constructing and maintaining its
roadbed, tracks, poles, and appliances in the street as an
electric interurban railway, the circuit court was in error
in limiting the plaintiff's damages to those sustained by the

mere maintenance and operation of interurban railway cars over street railway tracks in front of the plaintiff's premises. The jury should have been instructed, as requested, that the plaintiff was entitled to recover damages, if any there be, for the taking and appropriation by the respondent of said Lincoln avenue as a right of way for the location of its tracks and appliances used in operating its interurban railway. The jury should have been further instructed, as requested, that the legal effect of the condemnation proceeding was the acquisition by the respondent of a right of way for its interurban street railway pursuant to the privileges granted by the city of Waukesha, and the acquisition by the respondent for the purpose of conducting its transportation business of a perpetual interest in the real estate of the plaintiff.

The plaintiff's damages must, of course, be estimated with reference to conditions lawfully existing at the time of filing the award of commissioners, including the existence and operation of a street railway on the street in front of plaintiff's premises, and with reference to the changes made by the taking when completed, including the substitution of an interurban railway roadbed, track, and appliances permanently upon the street, but with the duty on the part of the respondent to continue the street railway service. The damages will be measured by the difference, if any, between the market value of the property in its former condition and its market value with the condemnation to the extent herein described completed. *Chapman v. O. & M. R. R. Co.* 33 Wis. 629; *Driver v. W. U. R. Co.* 32 Wis. 569; *Esch v. C., M. & St. P. R. Co.* 72 Wis. 229, 39 N. W. 129; *Alexian Bros. v. Oshkosh,* 95 Wis. 221, 70 N. W. 162; *Carl v. S. & F. du L. R. Co.* 46 Wis. 625, 1 N. W. 295; *Milwaukee & M. R. Co. v. Eble,* 3 Pin. 334; *Hutchinson v. C. & N. W. R. Co.* 37 Wis. 582; *S. C.* 41 Wis. 541.

With the novel features of the situation disposed of, by

considering the taking to have been completed at the time the commissioners filed their award, and considering as conditions lawfully existing prior to that time the street railway tracks and appliances and operation, excluding the unlawful operation of interurban cars, and treating as new conditions, brought about the taking, the maintenance in perpetuity upon the street of interurban tracks, appliances, and the operation of an interurban railway, subject to the duty to continue the street railway service during the unexpired term of the said franchise, there can be little difficulty in arriving at the true measure of compensation under rules of law well settled in this state.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial.

