## AS TO LIGHTING OF STREET CROSSINGS BY INTERURBAN RAILWAYS.

Circuit Court of Putnam County.

THE VILLAGE OF OTTAWA v. THE OHIO ELECTRIC RAILWAY CO.

Decided, November Term, 1910.

*Classification of Interurban Railways—Fundamentally Different from Street Railways—For Practical Purposes are in the Same Class as Steam Roads—Subject to the Same Obligations, When—Municipal Corporations—Sections 3762 and 9122.*

Interurban railways, by analogy of statutes regulating, the nature of business conducted, and mode of operation, now belong to the genus railroads, rather than that of street railways; hence interurban railways are deemed railroads within the meaning of General Code, 3762, and as such may be required by municipal ordinance to light street crossings. *State v. Cleveland*, 83 Ohio St., —, followed.

*Bailey & Leasure,* for plaintiff in error.
*Risser & Smith* and *Cable & Parmenter,* contra.

HURIN, P. J.; DONNELLY, J., and KINDER, J., concur.

In this action the village of Ottawa sued to recover from the Ohio Electric Railway Co. the sum of $364 for lighting street crossings. The court of common pleas sustained a demurrer to the petition as not stating a cause of action. The plaintiff not desiring to plead further brings the case into this court on error.

The Ohio Electric Railway Co. is an interurban electric railway company operating its cars by electricity on tracks through the village of Ottawa. By Section 3762, General Code, it is provided that:

"When deemed necessary by council of a municipality to have a * * * railway, located in whole or in part in such corporation * * * or any portion thereof, lighted, the council shall pass an ordinance for that purpose," etc.

But it is claimed that this does not apply to street railways and that interurban railways are street railways and, hence, it does not apply to them.

This contention is based upon a very indefinite exception as to street railways contained in the old Section 3309a and which apparently has been repealed and is not now found in the corresponding sections of the General Code, 8801-2-3 and 4.

It is also claimed that at the time of the enactment of the original sections, 2494, Revised Statutes (now 3762, General Code, et seq.), interurban railroads did not exist and hence the statutes relating to the lighting of steam railways could not apply to interurban roads.

A third claim is made that by Section 9122, General Code, "such companies shall be subject to the regulations provided for street railways and have all the powers, in so far as they are applicable, that other street railway companies possess," and that being thus classed as street railways, they can not be also classed with railroads, i. e., steam railroads.

With reference to this last claim it may be said that it is very doubtful whether this section applies, or was intended to apply, specifically to interurban railways. It is also evident that the provision that "such companies shall be subject to the regulations provided for street railways" would not of itself prevent their being subject to other regulations which might include such regulations as usually apply to steam railways.

But the term "such companies" as used in Section 9122, General Code, apparently refers to the companies mentioned in Sections 9115, General Code, and 9117, General Code, which relate solely and specifically to street railways, 9115 referring exclusively to street railways within a municipality and 9117 extending to such street railways, the right to extend their operations outside of such municipalities, and neither Section 9115 nor Section 9117 nor Section 9122, which refers only to such street railways, can have of themselves any necessary application to interurban railways.

An inspection of the statutes relating to electric railways shows at once that many of them were enacted at a time when interurban lines were unthought of.

The new General Code makes a distinction between street railways and interurban railways in Sections 3778-3780, inclu-

sive, these statutes having been passed since the interurban traffic became an important one.

But in our opinion, the statutes which are relied on as proving that interurban lines must be invariably treated as street car lines do not justify such an assumption, nor do the decisions of courts bear out this contention.

It is undoubtedly true that in certain respects interurban roads do bear a close resemblances, to city street railways.

As a rule—though by no means an invariable rule—their cars run singly, not in trains composed of numerous cars.

They are now usually propelled by electricity which happens just now to be the favorite motive power in propelling street cars.

They usually, in entering and passing through cities and villages, traverse the streets as do street cars—while steam lines do not universally do so—though they often do so.

But in many other respects the interurban lines more closely resemble steam lines.

Their traffic is over long distances and from city to city—not as street cars, confined to one city or village, or its immediate vicinity.

Their cars travel at a rate of speed rivalling and sometimes exceeding even the highest speed attained by steam lines and in fact in some portions of the country the steam lines are substituting electricity for steam as a propelling power, thereby practically becoming electric interurban lines. (They are specifically authorized to do this by Section 8758, General Code.)

Then too, it is now a common practice for interurban railways to run baggage cars and freight cars and frequently to couple two or more of such cars together—just like the trains on the steam lines. They have special cars for carrying live stock and for other heavy freight, for express traffic and for other purposes, no longer confining their business to the transfer of human passengers; and frequently these cars are combined into trains, a practice which is daily becoming more common, indicating a gradual but distinct change in the character of the interurban business.

The high rate of speed attained by electric interurban cars and the increasingly heavy cars now universally in use give to such cars a momentum which makes it increasingly difficult to bring them to a stop within a short distance.

In all of these respects the heavy interurban lines are more nearly year by year approximating the character of the steam lines, and any judicial classification which had its origin in conditions prevailing fifteen or even ten years ago must now be viewed with caution because of the complete change of conditions. The courts are bound to recognize this process of development, and they are doing so. In our own state this is distinctly apparent.

In the case of *Massillon Bridge Co.* v. *Iron Co.*, 59 O. S., 179, our Supreme Court held that the statutes of this state relating to railroads are separate and distinct from those relating to street railroads, and the word "railroad" in Section 3208 and in Section 1 of the act of March 20, 1889 (86 O. L., 120, Section 3231-1 Bates' Statutes, General Code, 8376) does not include street railroads. (These statutes relate to laborer's liens.)

And on page 186 Judge Burket says that "the statutes as to railroads do not apply to street railroads unless made to do so by clear inference."

While that decision related to a road that was called a street railroad, it in fact was an interurban line between Tiffin and Fostoria. But at that time the interurban traffic was in its infancy, and the line in question at that time and even at the present time had all of the characteristics of a street railway and few of those of the modern interurban lines except the one fact of running between two different towns.

The later case of *Greene* v. *Woodland Ave. St. R. R. Co.*, 62 O. S., 67, holds that Section 6478, Revised Statutes, General Code, 10239 (which related to suits before a justice against a railroad company), had no reference to a street railroad company, but that case had no reference to an interurban railroad company and is not in point.

The case of *Cincinnati, Lawrenceburg & Aurora Electric St. R. R. Co.* v. *Lohe, Admr.*, 68 O. S., 101, distinctly holds that "an

interurban electric railroad is classed as a street railroad by the statutes of this state.''

But in the opinion in that case (which was a case for damages for alleged negligence resulting in the death of a passenger who was riding in the vestibule of the car and had refused to go inside) Judge Burket clearly bases the statement of the syllabus upon the separation by the phrasing in Section 2780-17, Bates' Statutes (General Code, 5486-5491) of the street, suburban and interurban railroads from other railroads.

Yet on page 110 of the opinion he with equal clearness recognizes the distinction between street railways and interurban railways.   He says:

''It seems reasonably clear that while operating the cars of an interurban railroad within a municipality, the regulations and powers of a street railroad company are applicable, but when it comes to running cars of such railroads in the open country, upon a track substantially the same as the track of a steam railroad, and at a high rate of speed, it would seem that the same rules as to negligence and contributory negligence should prevail as are applicable to steam railroads, and that a passenger standing upon the platform of an interurban car in the open country, should be held to the same rules as if he were standing on the platform of a steam car.   The danger is the same in either case, and where there is no difference in danger, there should be no difference in the care required, nor in the rights and liabilities flowing from the neglect to observe the proper care.''

Here we have a distinct recognition by the Supreme Court of the growing approximation of interurban railway traffic to steam railway traffic—of the altered conditions of travel and of the fact that in the country at least, an interurban railroad is practically to be classed as a steam railroad notwithstanding the apparent classification of the statutes.

The case of *Commissioners of Ross County* v. *The Scioto Valley Traction Co.*, 75 O. S., 548, might be viewed as an authority against this proposition.   That was an action to enjoin the defendant from constructing its road across a highway at grade.

It was there held that an interurban railroad for the operation of cars by electricity and by the tractive friction resulting

from their own weight is not within the act of April 25, 1904 (97 O. L., 465), to provide how railroad and highway crossings may be constructed.

From the foregoing decisions it appears that while the Supreme Court still adheres to the general rule that the word railroad does not, *ex vi termini,* include street railroads or even interurban railroads, yet the distinction between street railroads and interurban railroads and the approximation in character of the interurban roads to the steam railroads is now well recognized, and as Judge Shauck, C. J., says, on page 559, "obviously the word 'railroad' needs not to be used in a strained or unnatural sense to include an interurban road operated by electricity."

It appears also from the case of *Electric St. R. R. Co.* v. *Lohe, Admr.,* 68 O. S., 101, to which I have referred, that where the conditions are identical the courts will apply identical rules—in that case it was the rule of negligence—but inferentially other rules as well should be applied.

And this was done in that case on the plainly stated ground that "the danger is the same in either case, and where there is no difference in danger, there should be no difference in the care required, nor in the rights and liabilities flowing from the neglect to observe the proper care."

Possibly this was *obiter dicta,* but it is good sense, too.

Now apply this statement to the case at bar.

An interurban railroad car passing through a village and crossing its streets with the speed and with nearly the momentum of a steam railroad train is a source of as much danger to the traffic on that street as a train on a steam road would be—possibly a greater danger because of there being less noise accompanying it—less warning to passengers on the street. Why should there be any difference in the care required in crossing those streets?

The provision for lighting the crossing is a provision for the safety of the public. The conditions being practically the same, whether the railroad is a steam railroad or an interurban railroad, the rule should be the same.

The old fashioned analogy to the street car. is now decidedly a strained analogy and should in all reason be abandoned.

It should in fairness be said that the statutes, 5415, et seq., General Code, still make a distinction between "railroads" and "interurban railroads" as to taxation; but the distinction relates only to the time of making and reporting the assessments for taxation. In other respects the same statutes relate to both kinds of roads, showing that they in fact are of the same class.

But perhaps the controlling decision in this case is the recent one by the Supreme Court in the case of State of Ohio v. Horace Cleveland, reported in the Ohio Law Reporter of October 31, 1910. It was there held that:

"A statute may include by inference a case not originally contemplated when it deals with a genus within which a new species is brought by a subsequent statute. Thus a statute making it unlawful to willfully throw a stone at a railroad car includes an interurban or traction railway car, although such cars were not known or in use at the time the statute was enacted."

This decision effectually answers the remaining objection raised by the defendant in the case at bar and in its essence supports all that we have said regarding the applicability of the statute now in question to interurban lines.

But an examination of recent decisions in other states throws additional light on this question. Elsewhere a like evolution of the law is keeping pace with the developments of interurban traffic. As this traffic outgrows its infantile conditions and assumes ever increasing importance, it is held to ever increasing obligations.

In an Alabama case (Birmingham Mineral Railroad Co. v. Jacobs, 92 Ala., 187; 12 L. R. A., 830), a case involving the standing of a "dummy line," the court said:

"A railroad organized under this act of the Legislature, running beyond the corporate limits of any city or town and through counties is not and necessarily can not be a street railway within the meaning of the Constitution and the provisions of the code in regard to street railways."

But that decision recognizes such roads as street railways while within the cities.

This case was affirmed in *L. & N. R. Co.* v. *Anchors,* 114 Ala., 492, where the question was argued at length and the court in discussing it said:

"Public necessities even within city limits demand increased facilities for travel over the horse car; and many decisions of courts applicable to street railways operated by horses could not be applied without manifest injustice to trains operated by steam or electricity."

These statements, while not relied on as authority because of the difference in the facts from those in the case at bar, indicate the modern tendency of courts with reference to the status of interurban lines.

The question has most frequently arisen as incidental to the question whether railroads on city streets constitute an additional burden for which adjacent property owners may recover damages.   Street railroads, being for the transportation of passengers solely, are held to be an aid to the purpose for which streets are designed and are not considered an additional burden, while "commercial" roads are.

In the case of *Chicago & N. W. Ry. Co.* v. *Milwaukee, Racine & Kenosha Electric Ry. Co.,* 95 Wis., 561 (37 L. R. A., 856), the court held that:

"An electric railway in a village street which forms part of a connecting line between cities for transporting merchandise, personal baggage, mail and express matter, as well as passengers, constitutes an additional servitude or burden upon the lands of abutting owners for which they are entitled to compensation."

And in the opinion in that case such roads are sharply distinguished from street railroads because of the difference in their purposes and methods.

To the same effect is *Abbott* v. *Milwaukee L., H. & T. Co.,* 126 Wis., 634.

The case of *Diebold* v. *Kentucky Traction Co.,* 63 L. R. A., 637, after a thorough discussion, holds that an electric railway, to be operated between two cities in different states and carry

passengers and freight, is a trunk railway—a commercial rail-way, and not a street railway.   It is there said:

"The term 'street railway,' as used in Section 163 of the state Constitution, means, and can only mean, applying to it a common-sense interpretation, those street railroads which, before the introduction of electricity, used mules and horses as motive power for drawing the street cars over its street car tracks, for the use and convenience of the local public in a municipality—those street cars that run along the streets of a city, picking up passengers here and there, and putting them off at street crossings and at the termini of the street car companies' tracks within the municipality.   They were created and organized and operated, and such was their character, as defined in their charters, strictly and exclusively for the local convenience of those persons or passengers whose pleasure or business prompted them to go from point to point within the city.   They were never organized or intended for commercial purposes between different cities within a state, or between different cities in different states.   In the case of *Louisville & P. R. Co.* v. *Louisville City R. Co.*, 2 Duv., 175, Judge Robertson said: 'A railroad is for the use of the universal public in the transportation of all persons, baggage and other freight.   A street railway is dedicated to the more limited use of the local public for the more transient transportation of persons only, and within the limits of the city.   In the technical sense, therefore, a street railway is not a railroad.   And we presume that, in this contradinctive sense, the term railroad was used in the appellant's charter, as amended in 1860.'   A railroad and a street railroad are, in both their technical and popular import, as distinct and different things as a road and a street, or as a bridge and a railroad bridge."

So, in the case of *Zehren* v. *Milwaukee Electric Railway & Light Co.*, 41 L. R. A., 575, the same rule was adhered to and, in the course of the opinion, the court say:

"The street railway, in its inception, is a purely urban institution.   It is intended to facilitate travel in and about the city from one part of the municipality to another and thus relieve the sidewalks of foot passengers and the roadway of vehicles. It is thus an aid to the exercise of the easement of passage; strictly a city convenience for use in the city by people living or stopping therein and fully under the control of municipal

authorities, who have been endowed with ample power for that purpose''—and after speaking of the introduction of new motive power and the enlargement of street cars, and the extension of distances for their operation, even connecting separated cities and villages, the court said:

''Thus the urban railway has developed into the interurban railway and threatens soon to develop into interstate railway. The small car which took up passengers at one corner and dropped them at another has become a large coach, approximating the ordinary railway coach in size, and has become a part, perhaps, of a train which sweeps across the country, from one city to another, bearing its load of passengers, ticketed through, with an occasional local passenger picked up on the highway. The purely city purpose which the urban railway subserved has developed into or been supplanted by an entirely different purpose, namely, the transportation of passengers from city to city, over long stretches of intervening country. * * * It is built and operated mainly to obtain the through travel from city to city, and only incidentally to take up a passenger in the country town. This through travel is unquestionably composed of people who otherwise would travel on the ordinary steam railroad, and would not use the highway at all.''

See, also, *March* v. *Milwaukee Light, Heat & Traction Co.,* 114 N. W., 804.

While none of these cases involve the exact question presented by the case at bar, they all recognize the essential principle that street railways and interurban railways are fundamentally different in purpose and character, that the street railway was designed for local intramural transit solely, and aid to the local use of streets; that the interurban railway is a commercial railway, designed for the transportation of persons, baggage, express matter, mail, freight, etc., over long distances and from city to city, a form of traffic which has no natural relation to the streets of a city or village through which the road passes and which constitutes an additional burden upon their use.

These cases all support the conclusion that for all practical purposes interurban railroads are railroads of the same class as steam railroads and, since they impose an additional burden upon the streets in which they have no natural or inherent rights, they are under similar obligations to those sustained by steam railroads.

One of these obligations, in our opinion, is that of contributing to the lighting of the streets which they cross, since such lighting is made more vitally necessary by the increased danger to pedestrians and occupants of vehicles thereon by reason of the use of such streets by the cars of such railroads.

Holding these views, the judgment of the court of common pleas will be reversed.